IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| SubAir Systems, LLC, ) | C/A No. 0:04-2272-CMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| Unique Designs/Turf, LLC d/b/a/ "Turf Air," ) | **ON MOTION FOR** |
| and Walter W. Fishburne, an individual, ) | **ATTORNEYS' FEES** |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Plaintiff's motion for attorneys' fees and costs in the amount of $34,119.76. Dkt No. 106 (filed January 31, 2007). This motion is pursued solely against the defaulted corporate Defendant Unique Designs/Turf, LLC d/b/a "Turf Air" ("Unique Designs"), and seeks one-half of the total fees and costs incurred in this action through the date of the motion. Nothing has been filed in opposition to the motion for fees and costs.[1]

Claims against the remaining Defendant, Walter W. Fishburne ("Fishburne"), were settled roughly two months after the present motion was filed. The "Consent Order and Final Judgment" (Dkt No. 108) which memorializes that agreement does not purport to address attorneys' fees, either as they might otherwise have been awarded against Fishburne or his defaulted co-defendant.

The present motion is supported by a short declaration which provides the names and positions of the four attorneys who have represented Plaintiff in this action (one shareholder in the

---

[1] Unique Designs was held in default after its counsel was relieved and it failed to obtain replacement counsel. Dkt Nos. 101 & 105. Prior to granting the motion for relief of counsel, the court stayed the action for two months to allow Defendants to obtain counsel. Dkt No. 100. In entering the stay, the court forewarned Unique Designs that it would be held in default if counsel did not appear. Dkt No. 100. The present motion was filed shortly after the entry of default. Dkt No. 106.

McNair Law Firm, P.A., and three associates in that firm). In addition, the annual billing rates are provided for each of the attorneys (ranging from $300 to $350 per hour for the shareholder and $190 to $300 for the associates). Total hours and resulting billed amounts are broken down by attorney. No further explanation, detail, or support for the amounts sought is provided. Likewise, there is no explanation or detail offered as to the costs and expenses.

## STANDARD

In determining the reasonableness of a request for attorneys' fees, a court should consider the following twelve factors:

> (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) fee awards in similar cases.

*Trimper v. City of Norfolk Va.,* 58 F.3d 68, 73 (4th Cir. 1995).[2]

While the court must consider all of the factors, they need not be applied in any strict manner as not all may affect the fee in a given case. *See E.E.O.C. v. Service News Co.,* 898 F.2d 958, 965 (4th Cir. 1990) (finding seven of the twelve factors did not affect the fee in that case, but remanding for further proceedings due to the district court's failure to explain the basis of its fee determination).

---

[2] These factors are generally referred to as the *Johnson* factors as they were first enunciated in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). They were adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978). In more recent cases, the courts restate the sixth factor as relating to counsel's expectations at the outset of the litigation. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Service News Co.*).

These factors are considered both in determining the propriety of the rate requested and the reasonableness of the hours expended "which are then multiplied to determine the lodestar figure which will normally reflect a reasonable rate." *Service News,* 898 F.2d at 965 (citing *Daly v. Hill,* 790 F.2d at 1077). The resulting lodestar figure is strongly presumed to be the reasonable fee. *City of Burlington v. Dague,* 505 U.S. 557 (1992)(rejecting contingency fee enhancement under the fee shifting statutes there at issue: the Clean Water Act and the Solid Waste Disposal Act). *See also Trimper,* 58 F.3d at 74 (lodestar fee based on multiplication of reasonable rate by reasonable hours is presumed to be fully compensatory without producing a windfall).

When a fee applicant has pursued both successful and unsuccessful claims, "the most critical factor . . . is the degree of success obtained" because when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole may be an excessive amount." *Brodziak,* 145 F.3d at 196-97 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In determining whether to reduce the compensable hours, the court must first determine "whether the claims on which the plaintiff prevailed are related to those on which he did not." *Id.*

> In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim. *Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.* . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and *therefore no fee may be awarded for services on the unsuccessful claim*.

*Hensley,* 461 U.S. at 434-35 (emphasis added, internal quotations omitted). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his

3

successful claims, the hours spent on the unsuccessful claim should be excluded." *Id.*

## DISCUSSION

The declaration filed in support of the present motion provides, at most, minimal support for a handful of the twelve *Johnson* factors. *See* n. 1. For example, the first factor seeks information regarding "the time and labor *required* to litigate the suit." The supporting declaration, however, offers only an indication of the total time *billed*. At most, this indicates the time that was actually invested by the firm. There is no further support (such as time entries or summaries describing the work performed) which would support the conclusion that the time was, in fact, "required" to litigate the action.

Likewise, the only information given as to rates is a statement of the "usual rates" charged by the attorneys whose time was billed to the file. The court may presume from this that the fee arrangement was for a "fixed" hourly rate (sixth factor) and perhaps that the rates were "customary" for these particular attorneys. This information is, however, insufficient to support the conclusion that the rates are customary within the geographic area for the relevant field of law (fifth factor). As to the eighth factor, the court may determine from its own knowledge of the record that Plaintiff was successful, albeit by default (eighth factor). Success in any more practical sense is not addressed.

No discussion is provided as to the case's novelty and difficulty (second factor), or the level of skill required to handle a case of this nature (third factor). Neither does the motion address the impact of this case on counsel's ability to perform other work (fourth factor), any special time limitations (seventh factor), or factors going to undesirability of the case (tenth factor). No declaration or other evidence is offered as to: the "experience, reputation and ability of the attorney[s]" whose time is at issue (ninth factor); "the nature and length of the attorney's professional

relationship with the client" (eleventh factor); or fee awards in similar cases (twelfth factor).

The request for costs rests on an even less detailed record. Only the total amount sought is provided.

As the above discussion suggests, there is an insufficient record on which to base an award fees and costs. The motion for fees and costs is denied on this basis.[3]

**IT IS SO ORDERED**.

        s/ Cameron McGowan Currie
        CAMERON MCGOWAN CURRIE
        UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 9, 2007

C:\temp\notesB0AA3C\04-2272 vlv subair v unique designs post jdmt atty fee order -- denied for insufficient evid.wpd

---

[3] The court presumes that the decision not to make a better record in support of the attorney fee application was based on the defaulted status of Unique Designs. Not only does such a status predict a lack of opposition, but also a probable lack of collectability. Be that as it may, the court is still required to analyze the *Johnson* factors. By failing to provide an adequate record to support that analysis, Plaintiff has waived its right to an award of fees and costs.

5